### In re KURSHEEDT MANUF'G CO.

#### (Circuit Court, S. D. New York. January 5, 1893.)

CUSTOMS DUTIES—CLASSIFICATION—LENO CLOTH.

So-called "leno cloth," being dyed cotton goods, imported in pieces about 40 yards in length by 42 inches in width, the material being woven so that about one-half the width was plain and the remainder a more or less open-work pattern giving the so-styled "leno effect," and one edge of the fabric being turned over and sewed down by machinery, forming a hem of about 3 inches in width, *held* not properly dutiable as classified by the collector of the port of New York, as partly made cotton wearing apparel, at 50 per cent. ad valorem, under paragraph 349 of schedule I, of the tariff act of October 1, 1890, but *held*, further, that, as the proofs in the case showed uncontradicted that the material, because of the peculiarity of the weave, gave a different count of threads to the square inch in different parts of the fabric, the plain and open-work parts, and the larger portion of the cloth, contained less than 200 threads to the square inch, therefore the merchandise was not dutiable at 45 per cent ad valorem, under paragraph 348 of the same schedule and act, as claimed in the importer's protest, and the classification by the collector must stand.

### At Law.

Appeal by the collector of customs of the port of New York from a decision of the board of United States general appraisers reversing the decision of the collector and sustaining the protest of the importer, the Kursheedt Manufacturing Company, respecting the classification for duty of certain black-dyed cotton goods known as "Leno Cloth," imported in pieces of about 40 yards in length and 42 inches in breadth, the greater part of the material in width being a plain fabric, and the other part consisting of certain open-work patterns or effects produced by separating and grouping the threads in the process of weaving, one of the edges being turned over and sewed down by sewing machine, making a plain hem of about 3 inches in width. The collector classified the merchandise for duty under paragraph 349 of the tariff act of October 1, 1890, which, so far as applicable, is as follows:

"349. Clothing, ready made, and articles of wearing apparel of every description, handkerchiefs, and neckties or neckwear, composed of cotton or other vegetable fiber, or of which cotton or other vegetable fiber is the component material of chief value, made up or manufactured, wholly or in part, by the tailor, seamstress, or manufacturer,—all of the foregoing not specially provided for in this act act, fifty per centum ad valorem."

The importers protested, claiming that their merchandise was dutiable at 45 per cent. ad valorem as colored cottons, valued at over 15 cents per square yard, under paragraph 348 of the same tariff act, which, omitting immaterial parts, is as follows:

"348. Cotton cloth, * * * exceeding two hundred threads to the square inch, counting the warp and filling, * * *: provided, that on all such cotton cloths, * * * dyed, colored, stained, painted, or printed, valued at over fifteen cents per square yard, there shall be levied, collected, and paid a duty of forty-five per centum ad valorem."

The board of United States general appraisers decided that the leno cloth in question was not in the form of a garment, and was not known as wearing apparel, but was a "countable cotton cloth." The protest of the importers

was accordingly sustained and the decision of the collector reversed. The collector appealed to the circuit court, where the testimony of several witnesses was taken in behalf of the government, tending to show that the merchandise in question was used almost exclusively to be made up into women's aprons, skirts, and dresses, requiring from a yard and a half to five yards for each garment, and that the broad hem which was on the goods was a part of the garments when finished. The evidence of an examiner in the appraiser's department of the custom house was also taken, who had made a count of the threads to the square inch in different parts of the fabric constituting the warp and filling, and who found in one part where the threads were crowded together, 228 threads to the square inch; in another part of the open work, 185 threads; and in the plain portion of the fabric, 169 threads to the square inch; the count in each case being made by cutting out a square inch, and unraveling the threads therefrom.

Edward Mitchell, U. S. Atty., and James T. Van Rensselaer, Asst. U. S. Atty., for collector and government.

Alex. E. Kursheedt, for importer.

COXE, District Judge, (orally.) This appeal fairly presents two questions for the court. The first is whether or not the importation is wearing apparel. Upon that proposition I think the respondent is correct. I do not believe that putting a hem upon a piece of cloth makes it "wearing apparel made up or manufactured wholly or in part." The other question relates to the efficiency of the protest. The protest specifically points out, as the section under which these goods should have been classified by the collector, paragraph 348 of the tariff act of 1890. That paragraph, so far as it is necessary to refer to it here, provides for a duty upon "cotton cloth not bleached, dyed, colored, stained, painted, or printed, exceeding 200 threads to the square inch," etc. The proof presented to this court is not disputed that a great portion, and by far the larger portion, of the imported cloth contains less than 200 threads to the square inch. Only a very small part thereof exceeds 200 threads to the square inch. Therefore, it seems to me that the importer was wrong in pointing out section 348. The only question here is whether or not the goods should have been classified under that section; not whether the collector is right, but whether the importer is right. They could not have been classified under that section, for the reason that they do not contain threads exceeding 200 to the square inch. The collector was not required to look elsewhere than to the particular paragraph pointed out by the protest.

The decision of the appraisers is reversed.